# Burger *versus* Dankel.

1. In order to convert a deed absolute on its face into a mortgage by parol evidence, such evidence must be clear, explicit and unequivocal.

2. The parol defeasance must in such case be shown to be contemporaneous with the deed. No subsequent parol agreement will convert a deed into a mortgage or affect its validity as a deed.

3. The fact that a deed absolute on its face is in reality a mortgage may be shown not only by direct evidence but also by facts and circumstances from which such a result may be inferred. The facts and circumstances, however, must, in such case, be clearly inconsistent with the deed's being an absolute conveyance.

4. Where a party claiming under a deed brings ejectment for land, and the defence set up is that the conveyance by which the plaintiff claims title is a mortgage, such defence is purely equitable. If the facts are not in dispute, the court is to weigh and determine whether they are sufficient to submit to a jury. He should not cast the whole burden in such case upon the jury.

5. The evidence in this case held insufficient to warrant the court in submitting to the jury the question whether a deed absolute on its face was in reality a mortgage.

4 OUTERBRIDGE—8

[Burger *v.* Dankel.]

March 10th 1882.    Before Sharswood, C. J., Mercur, Gordon, Paxson, Trunkey, Sterrett and Green, JJ.

Error to the Court of Common Pleas of *Lehigh county:* Of January Term 1881, No. 167.

Ejectment, by David Burger against Solomon Dankel and Henry Merkel, to recover a lot of ground in Lower Milford township.  Plea, the general issue.

On the trial, before Albright, P. J., both parties claimed under Daniel Walter, Jr., deceased, in whom title was vested in his life-time to the premises in question by the will of his father, Daniel Walter, Sr., proved in 1874.

The plaintiff claimed title from Daniel Walter, Jr., by virtue of the following deed, which was put in evidence :—

Know all men by these presents that I, Daniel Walter, of Lower Milford township, Lehigh county, do hereby sell, convey, assign, transfer and set over unto David Burger, of Upper Macungie township, in said county, his heirs and assigns, all my life estate or any other estate, right, title or interest, or any other income which I have acquired, said certain house and lot situate in Lower Milford, aforesaid, in and by the last will and testament of my deceased father, Daniel Walter, for which I have received a full consideration from the said David Burger ; the above transfer and sale shall go into effect from this day.

Witness my hand and seal this fifth day of April, A. D. one thousand eight hundred and seventy-five.

Daniel Walter.  [seal.]

Witness present :  J. F. Newhard.

Proved by the subscribing witness August 5th 1875, and recorded same day.

The defendant Dankel claimed and showed title as purchaser of the premises in question, at a sale thereof, on September 18th 1875, by the administratrix of Daniel Walter, under an order of the Orphans' Court, for the payment of debts.    The defendant Merkel was in possession as tenant under Dankel.

The defendant's counsel made the following offer :—

Defendants offer in evidence the record of the prosecution, Commonwealth *v.* Daniel Walter, 45 January Sessions 1875, for fornication and bastardy upon oath of plaintiff's daughter, Jane Burger, to be followed by evidence that the case was settled for the sum of $100 with David Burger, plaintiff, and the money received, and that he became the surety of Daniel Walter on a bond to indemnify him against the charge of the county for the support of this child, in case it should come upon this county for support, and that by reason of that this pa-

[Burger v. Dankel.]

per of the 5th of April, 1875, was given to him,—to be followed by evidence that the child never became a charge on the county, and that no consideration passed for this paper; that the paper was to be of no force or virtue, unless the child of the plaintiff's daughter, Jane Burger, should become a charge on the county, and that this was a part of an agreement made at or about the time of the execution and delivery of this paper, and that this was the inducing cause of the execution of the paper by Daniel Walter.

Objected to; objection overruled.

The defendant's evidence, submitted under this offer was to the following effect:—

Daniel Walter was convicted for fornication and bastardy, committed with the plaintiff's daughter, and imprisoned for non-payment of the weekly sum imposed. While so imprisoned, the plaintiff accepted $100, procured by Walter, and, it seems, signed as surety Walter's bonds to the directors of the poor, conditioned to indemnify them if the bastard child should become a charge on the county. The child did not become a charge on the county. The alleged bond, said to be dated on April 5th 1875, the same date as the above mentioned deed, was not proved, nor admitted in evidence. Daniel Walter was thereupon released from jail, and died a few weeks afterwards.

There was no direct evidence of any agreement between Walter and the plaintiff at or about the time of the execution of said deed.

J. F. Newhard, the subscribing witness, testified as follows:—

Q. (Deed shown witness.) Did you witness that paper? A. Yes, sir. Q. Was there any money paid at the time of the execution of that paper? A. Not that I saw. Q. Do you recollect whether people were present at the time? A. There might have been somebody in the office, but I don't recollect who they were.

Cross-examination: Q. You explained the contents of this instrument to Mr. Walter? A. Yes, sir; I read it to him in English, and he afterwards wanted me to explain it to him in German, and I did it as well as I could. Q. And after you explained it to him he signed? A. Yes, sir; he said he was satisfied and signed it. Q. You were not present when Mr. Burger agreed on the terms? A. No, sir; the paper was brought down. Q. He was brought into the office and there the agreement was executed? A. Yes, sir. Q. You don't know for what the agreement was executed? A. No, sir; I knew what this paper was for; he asked me to explain it to him in German what it was; I did it as far as I could, and he said he was satisfied with it, and he signed it; there was no money passed or

[Burger *v.* Dankel.]

anything of the kind. Q. You were not present when they made the agreement? A. No, sir; they brought this paper into the office. Q. You don't know what the terms or consideration of the agreement is? A. I know what that is. Q. You read that to him and explained it, and he said he was satisfied and signed it? A. Yes, sir; he said so, and he signed and I signed it as a witness; that is all I know about the transaction.

Aaron Wagner, attorney in fact for the administratrix, testified, that he had a conversation with the plaintiff in June 1875, when plaintiff said that he went Walter's security—that he might just as well do it as he had to keep the child anyhow; there was something said about getting a paper from Walter, but witness could not recollect what it was. The witness subsequently wrote to plaintiff that he was settling up Walter's estate, and inquired about a claim he heard plaintiff had to the land; that plaintiff then called on him and claimed the land under the paper; witness said he had advertised the personal property; Burger told witness to go ahead and sell everything, but not to pay out the money until the court decided.

Victor Malthauer, a brother-in-law of Walter, testified that he was present in the jail when Mr. Burger came there to see Walter, and obtained the $100 to settle the case.

Q. What did Burger say about this paper? A. Burger said to me—he asked me whether I had anything against it if he got a paper from Walter, because he had gone security to the Poor Directors for the child. Q. Do you recollect that Mr. Newhard was there? A. Yes sir. Q. Had the paper been signed yet, or was it on the table at the jail? A. It was lying on the table and he had the pen in hand to sign it. A. And when you said you had no objection to it, he signed it? A. Yes, sir. Q. Did Mr. Burger tell you, at the time you gave the note for $100, that Walter would also have to sign off his interest in the lot, and until then he would not consent to release because he had to raise this child? A. There was something said about that, but whether it it was that way I cannot tell. I do not know anything about the terms of the agreement in reference to the raising of the child between Walter and Berger. Q. Do you recollect that Mr. Walter asked Mr. Burger in your presence whether he had to pay rent right away for the use of the lot? A. I know that something was talked about it, only I don't know exactly what it was.

Evan Holben Esq., the auditor appointed to report distribution of the proceeds of the Orphans' Court sale, testified that Berger claimed at the audit, by virtue of his deed of assignment, the proceeds of the lot in question.

At the close of the defendants' evidence, plaintiffs counsel requested the court to rule out all the evidence admitted under

[Burger v. Dankel.]

the offer, because it was not followed by evidence as stated by the counsel when he made the offer; the counsel did not show that this party ever executed a bond to indemnify the Directors of the Poor against the charge of this child upon the county; neither did he show that the signing of this bond was the inducing cause of the execution of the deed and the delivery of the paper; neither did he show that it was a part of the agreement at or about the time of the execution; having failed to do what he promised, we say that the court is bound to rule out what evidence was gotten in under the promise that was made at that time.

The court declined to rule out the evidence as requested; the paper called a bond or recognizance, not having been shown to be part of the record, and not proven, is not to be considered in evidence.

The plaintiff presented, inter alia, the following points:—

3. There is no evidence in the case to show that anything ever took place between Daniel Walter and David Burger either before the execution of the paper of date April 5th 1875, at the time of its execution, or afterwards, that indicated that it was a mortgage or so intended between them.—*Refused.*

4. There is no evidence in the case upon which the jury would be warranted in finding that the paper from Walter to Burger is a mortgage, and the plaintiff therefore asks the court so to instruct the jury.—*Refused.*

6. It is the province of the court to decide whether particular parol evidence be sufficient to convert an absolute conveyance into an equitable mortgage. Under this rule of law the plaintiff requests the court to give binding instructions to the jury to render a verdict in favor of the plaintiff under the evidence in this case. *Answer.*—The court declines to give the instruction here prayed for. The court submitted the case to the jury, with instructions that the assignment from Walter to plaintiff was an absolute deed on its face, in order to show by parol, that it is a mortgage the proof of the agreement necessary to change its character must be clear, explicit and unequivocal. " Did Burger make any admissions which tend to show that this was only a mortgage? . . . . . Do his admissions amount to anything else, but that he was the owner of the land? If you find that he admitted that he had only a money claim against Walter, and that that was to be paid out of the proceeds of the sale of the lot as Walter's property, then if that admission and the other evidence in the case satisfies you that it is proved clearly, explicitly and unequivocally that it was a mortgage only, the plaintiff has no right to recover, and your verdict ought to be in favor of the defendants."

Verdict and judgment for the defendants. The plaintiff

[Burger *v.* Dankel.]

took this writ of error, assigning for error, inter alia, the refusal of his points, as above.

*Wm. H. Sowden* (*Edward Harvey* and *Levi Smoyer* with him), for the plaintiff in error.—The defendants' evidence did not come up to their offer, and was wholly insufficient to be submitted to the jury from which to find a parol defeasance : Stewart's Appeal, 39 Leg. Int. 81.   Subsequent admissions are insufficient to affect an absolute title once vested : Baisch *v.* Oakeley, 18 P. F. S. 92 ; Churcher *v.* Guernsey, 3 Wr. 86.

*John. G. Stiles* (*Harry G. Stiles* with him), for defendants in error.—There was ample evidence to be submitted to the jury, and the instructions as to the character of proof required to show that a deed absolute on its face is only a mortgage were fully up to the standard required by the decisions.   In Rhines *v.* Baird, 5 Wright 263, Justice STRONG says : " It is true there was no direct evidence of an express agreement that the assignment should be held merely as a security for indebtedness.   To prove the instrument defeasable though in form absolute such evidence was not indispensable.   Whether it is to be regarded as an absolute conveyance or as a mortgage depends more upon its attendant circumstances than upon any express agreement."   Justice MERCUR said in Plumer *v.* Guthrie, 26 P. F. Smith 457, that it required " proof of a contract, but it may be inferred from facts and circumstances inconsistent with its being an absolute conveyance."

Mr. Justice MERCUR delivered the opinion of the court, October 2d 1882.

The plaintiff's right to recover is based on a deed absolute on its face.   The defendants claim it to be in fact a mortgage only.   The sufficiency of the evidence to establish a parol defeasance, is the only question necessary for us to consider.

The rule that a deed absolute on its face made prior to the Act of 8th June 1881, may be shown by parol to be a mortgage is too well settled in this state to need any citation of authorities.   The proof necessary to so convert it, must, however, be clear, explicit and unequivocal : Todd *v.* Campbell, 8 Casey 250 ; Plumer *v.* Guthrie, 26 P. F. Smith 441 ; Insurance Company *v.* Furniture Company, 39 Legal Intel. 81.   The parol defeasance must also be cotemporaneous with the deed.   No subsequent parol agreement will convert it into a mortgage or affect its validity as a deed : Kelly *v.* Thompson, 7 Watts 401 ; Plumer *v.* Guthrie, supra.   It is true it was said in Rhines *v.* Baird, 5 Wright 256, that the agreement need not be express, but may be inferred from facts and circumstances inconsistent with its being an absolute conveyance.   Conceding this to be so, yet the facts and circumstances relied on must not

[Borough of Mauch Chunk v. Kline.]

be of doubtful import. It is not sufficient that they be merely consistent with the instrument being a mortgage, they must be clearly inconsistent with its being an absolute conveyance. Evidence less than this, cannot establish a parol defeasance. Titles regular and legal on their face cannot be swept away by parol evidence of doubtful facts or ambiguous inferences.

As such a defence is purely equitable, the judge sits as a chancellor. If the facts are not in dispute, he is to declare their effect and determine whether the defence is well founded. He is to judge both of the equity and of the facts. He must view and weigh the facts and determine whether they be sufficient to submit to a jury. He must not cast the whole burden on the jury : Todd v. Campbell, supra; Miller v. Smith, 9 Casey 386 ; De France v. De France, 10 Id. 385 ; Bennett v. Fulmer, 13 Wright 155 ; McGinity v. McGinity, 13 P. F. Smith 38 ; Odenbaugh v. Bradford, 17 Id. 101 ; Plumer v. Guthrie, supra. In arriving at the facts the testimony of the parties is to have the same effect as the averments contained in the bill and answer : Odenbaugh v. Bradford, supra.

The evidence of any agreement about the time the deed was executed, affecting it, is too uncertain and indefinite to change its absolute terms. The insufficiency thereof seems to have been recognised by the learned judge, for he appears to have submitted the case mainly on the alleged declarations of the plaintiff made afterwards. That evidence is vague and contradictory. It is too conflicting in its terms, and too doubtful in its application, to induce a chancellor to overturn the absolute character of the deed. A careful reading of all the evidence has led us to the conclusion that it was insufficient to submit the case to the jury. This view of the case makes it unnecessary to consider the other assignments.

Judgment reversed and a venire facias de novo awarded.